Fuld, J.
(dissenting). The defendant Tannenbaum was convicted of violating section 484-i of the Penal Law, prohibiting the sale of certain material to children. Since, as I have already indicated (People v. Kahan, 15 N Y 2d 311, 312), I have no doubt that the Legislature may constitutionally act to protect youngsters from the sort of objectionable matter contained in the magazine before us (see, also, Bookcase, Inc. v. Broderick, 18 N Y 2d 71), it is with some reluctance that I vote to reverse his conviction. I do not see how, if there is to be compliance with the demands of the Constitution, section 484-i may be upheld. Laudable though the purpose of the section may be, it offends essential guarantees, since it punishes the distribution of constitutionally protected communication. Indeed, it contains the same defects “ in respect of its substantive definitions ” as *276 led this court in People v. Kahan (15 N Y 2d 311, 312, supra) to invalidate former section 484-h.
Section 484-i proscribes the sale to minors “ actually or apparently under the age of eighteen years ’ ’ of photographs and other representations of certain parts of the human body if such material appeals to the “ curiosity ” of children “ as to sex or to the anatomical differences between the sexes”. These criteria, standing by themselves, are patently insufficient and impermissible predicates for penal liability. Quite apart from the fact that the statute would improperly cover both married teenagers and children of tender years (cf. Griswold v. Connecticut, 381 U. S. 479, 485-486), it would indiscriminately punish the dissemination of material that stimulates healthy, as well as morbid, curiosity about sex and sexual differences. Taken literally, the provision would outlaw every course in sex education and feminine hygiene taught in the schools and would bar access by children to reproductions of, for example, the paintings by Michelangelo in the .Sistine Chapel as well as the works of other great masters. (See Roth v. United States, 354 U. S. 476, 487; People v. Bookcase, Inc., 14 N Y 2d 409, 417-418.)
It is claimed, however, that the statute is limited in its application by the requirement that the specified material be “ presented in such a manner as to exploit lust for commercial gain ”. Even if this be so, the legislation is still too broad. Although the manner in which a work is sold may have some bearing in determining the question of obscenity “ in close cases ” (Ginzburg v. United States, 383 U. S. 463, 474; see, also, Memoirs v. Massachusetts, 383 U. S. 413, 420-421), the intent of the seller, or his presentation (assuming that the presentation is not itself punishable), does not deprive publications or other works which are not questionable of their constitutional protection. (See Ginzburg v. United States, 383 U. S. 463, 475-476, supra.) And yet, on its face, section 484-i punishes the sale of nonquestionable, constitutionally protected, material. What is more, the language ‘ ‘ presented in such a manner as to exploit lust for commercial gain” — upon which the majority now relies to sustain the section’s constitutionality — is the exact phrase which this court recently held unconstitutionally vague in the Kahan case (15 N Y 2d 311, supra), and it surely has not gained precision by *277 re-enactment. On the contrary, it is clear that the quoted provision does not sufficiently limit the reach of section 484-i and does not enable booksellers and others within its purview to know with any reasonable degree of certainty exactly what material is condemned. In this respect, the statute violates ‘ ‘ the first essential of due process of law”. (Connally v. General Constr. Co., 269 U. S. 385, 391; see, also, Winters v. New York, 333 U. S. 507, 519-520; People v. Bookcase, Inc., 14 N Y 2d 409, 415-416, supra; People v. Firth, 3 N Y 2d 472, 474-476.)
It is difficult to understand the place which section 484-i is intended to fill in the legislative scheme. Within a few days after enacting section 484-h — to replace the similarly numbered section which the court ruled invalid in Kahan (15 N Y 2d 311, supra) — the Legislature adopted present section 484-i dealing with the identical subject, the distribution of objectionable materials to minors. The basic difference between the two pieces of legislation is that the former incorporates a number of safeguards, omitted from section 484-i, designed to prevent unconstitutional application of the law.[1] Among such safeguards are these: (1) the material must “ predominantly appeal * * * to the prurient, shameful or morbid interest of minors (2) it must be “ patently offensive ” when judged in accordance with prevailing community standards for minors; and (3) it must be “utterly without redeeming social importance for minors”. Section 484-i, on the other hand, does not require proof of any of those items to support prosecution of the vendor.
In a proceeding to punish the dissemination of material to the general public on the ground that it is obscene, the People must, of course, prove that the material has a predominant appeal to prurient interest,[2] that it is so patently offensive as to affront current community standards of decency and that it has no redeeming social value, (See Memoirs v. Massachusetts, 383 U. S. 413, 418, supra; Mishkin v. New York, 383 U. S. 502, *278 508-509; Manual Enterprises v. Day, 370 U. S. 478, 482; Roth v. United States, 354 U. S. 476, 489, supra.)[3] The standards of a law punishing the sale of obscene or objectionable matter to youngsters need not be so stringent. This is so not because children may be denied the constitutional right of access to communication but, rather, because children may, in the exercise of that right, be beset by dangers that do not affect adults or, if they do, not to the same degree. (See Censorship by Age Classification, 69 Yale L. J. 141, 147-148.) The responsibility and authority of the State are for that reason greater and its powers more extensive when it legislates for the protection of children. (See Bookcase, Inc. v. Broderick, 18 N Y 2d 71, supra; Prince v. Massachusetts, 321 U. S. 158, 168.)[4] Be that as it may, however, it is essential that such legislation be clearly drawn and “ restricted to the evil with which it is said to deal.” (Butler v. Michigan, 352 U. S. 380, 383; see, also, Winters v. New York, 333 U. S. 507, 509 et seq., supra.) When a State statute affecting the constitutional right of free speech is broader in its application than necessary to effect its purpose, as is section 484-i, it violates the First and Fourteenth Amendments of the Federal Constitution. (See Ashton v. Kentucky, 384 U. S. 195, 200-201; Butler v. Michigan, 352 U. S. 380, supra; see, also, People v. Richmond County News, 9 N Y 2d 578, 584, 586.)
Section 484-h of the Penal Law — the statute to which I have previously referred — also requires, as an additional prerequisite to prosecution, that the defendant bookseller knew or had “reason to know” that his customer was under age. The statute provides that an honest mistake in this regard is a complete defense, provided the seller made a reasonable and bona fide attempt to ascertain the buyer’s age. Section 484-i, on the other hand, completely ignores this requirement of scienter as *279 to age, an element which, I note, three of the fonr judges comprising the majority in the Kahan case (15 N Y 2d 311, supra) explicitly declared to be indispensable in such a statute.[5] I have come on no other case which considered this precise issue but, in Smith v. California (361 U. S. 117), the Supreme Court held that a conviction for selling obscene literature could not be sustained unless there was some requirement as to scienter on the part of the seller with respect to the contents of the' boots involved. The court reasoned that, ‘ ‘ if the bookseller is criminally liable without knowledge of the contents * * *, he will tend to restrict the books he sells to those he has inspected; and thus the State will.have imposed a restriction upon the distribution of constitutionally protected as well as obscene literature” (361 U. S., at p. 153). This rationale would seem to be equally applicable to scienter as to age when the youth of the buyer is an element of the crime. Absolute liability without regard to whether the bookseller was put on notice that his customer was under age would necessarily restrict and curtail the distribution of literature to adults, particularly women, whose youthful appearance belied mature years. In its efforts to protect children, the State is not privileged to so hinder the flow of information and ideas.
The People would have us analogize the sale of books to the sale of liquor for which, it is settled, there is strict accountability. (Alcoholic Beverage Control Law, § 65, subd. 1; see People v. Werner, 174 N. Y. 132, 134.) The analogy is, however, imperfect and cannot stand analysis. Unlike traffic in liquor which is a privilege that the State may limit or even withdraw at any time (U. S. Const., 21st Arndt.), traffic in books — with its coextensive guarantee of freedom of expression —is a constitutionally protected right. As the Supreme Court put it in the Smith case (361 U. S. 147, 152-153, supra), “ There is no specific constitutional inhibition against making the distributors of food the strictest censors of their merchandise, but the constitutional guarantees of the freedom of speech and of the press stand in the way of imposing a similar requirement on the bookseller.”
*280 Finally, the argument is advanced that, if scienter as to age is a constitutional imperative, then, this court should read that element into the statute instead of invalidating it. (See People v. Finkelstein, 9 N Y 2d 342.) But the language of section 484-i is manifestly too explicit and specific to permit such a construction. The People acknowledge that, in the clause “knowingly sells • * * * to a person actually or apparently under * * * eighteen”, the word “ apparently” is confusing and nonsensical. It is, however, noteworthy that the exact same verbiage was used by the Legislature in prohibiting the sale of liquor to children (Alcoholic Beverage C'ontrol Law, § 65, subd. 1) and, since that wording has consistently been interpreted to impose strict criminal liability (see, e.g., People v. Werner, 174 N. Y. 132, 134, supra; Matter of Barnett v. O'Connell, 279 App. Div. 449), there can be no doubt — as, indeed, the majority so holds — that a similar meaning was intended for section 484-i.[6]
In short, I think it clear that section 484-i, by virtue of its confusing text and its exclusion of constitutionally mandated criteria, infringes First Amendment rights and the demands of due process. (See People v. Kahan, 15 N Y 2d 311, supra; see, also, Note, 34 Fordham L. Rev. 692, 705-707.) The defendant’s conviction should be reversed and the information dismissed.

. Since section 484-h is not before us, references to it are for comparative purposes only.

. Where the material is designed for and primarily disseminated to a particular deviant sexual group, its prurient appeal is determined “ in terms of the sexual interests of its intended and probable recipient group ”. (Mishkin v. New York, 383 U. S. 502, 509.)

. In a prosecution in this State under section 1141 of the Penal Law, the People must also establish that the book or other material in question is “ hardcore pornography”. (People v. Richmond County News, 9 N Y 2d 578, 586-587; People v. Fritch, 13 N Y 2d 119, 123.) Consequently, as the Supreme Court recently observed in Mishkin v. New York (383 U. S., at pp. 506, 508), our court, by so construing section 1141, has adopted a more limited definition of “ obscenity” than that adopted in the Roth case (354 U. S. 476, supra).

. While the supervision of children’s reading is best left to their parents, the knowledge that such parental control or guidance cannot always be provided justifies broader regulation in this area.

. As the fourth judge, I found it “unnecessary” to consider the question in view of the other and more basic reasons assigned by the court for holding the statute under review — old section 484-h — unconstitutional (15 N Y 2d 311, 314).

. In any event, even if the statute could possibly be interpreted to require proof of scienter as to age, a reversal is compelled in the present case since the trial court did not so read the statute. (See People v. Finkelstein, 9 N Y 2d 342, supra; Shuttlesworth v. Birmingham, 382 U. S. 87, 91-92.)